**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4985-15T2
          A-4986-15T2

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

    Plaintiff-Respondent,

v.

M.M. and E.J.,

    Defendants-Appellants.

_____

IN THE MATTER OF THE GUARDIANSHIP OF
MI.M., P.J., V.M., and G.M., minors.

_____

Submitted May 9, 2017 — Decided June 9, 2017

Before Judges Reisner, Rothstadt and Sumners.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Union County,
Docket No. FG-20-0011-16.

Joseph E. Krakora, Public Defender, attorney
for appellant M.M. (Carol A. Weil, Designated
Counsel, on the brief).

Joseph E. Krakora, Public Defender, attorney
for appellant E.J. (Beryl Foster-Andres,
Designated Counsel, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ellen L. Buckwalter, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian for minors MI.M., V.M., and P.R.G. (Nancy P. Fratz, Assistant Deputy Public Defender, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian for minor respondent G.M. (Danielle Ruiz, Designated Counsel, on the brief).

PER CURIAM

In these consolidated matters, defendants M.M. (Marilyn) and E.J. (Evan)[1] appeal from a June 30, 2016 Family Part guardianship judgment and order terminating their parental rights to their children. They argue that they did not intentionally harm their children, the court improperly relied upon referrals that were unsubstantiated, and plaintiff New Jersey Division of Child Protection and Permanency (Division) failed to provide them with sufficient services and interfered with their visitation. They also contend that the court failed to acknowledge their success in the services provided, and the evidence did not support a determination that termination would not do more harm than good. We disagree and affirm substantially for the reasons stated by

---

[1] We employ pseudonyms for clarity and to protect the parties' identities.

Judge Daniel R. Lindemann in his exhaustive 113 page, single-spaced written decision issued with the order.

The evidence is outlined in detail in the judge's decision. A summary will suffice here. Mi.M. (Max), born April 23, 2006, V.M. (Valerie), born April 12, 2007, P.J. (Peter), born November 9, 2008, and G.M. (Geoff), born May 19, 2014, are Marilyn and Evan's biological children. The Division's first involvement with the family occurred in 2012, when it received a referral indicating the children lacked stable housing, did not attend school, and Valerie, then age five, looked "emaciated." The children were taken to the hospital where Valerie, who weighed 24.2 pounds, was diagnosed with "failure to thrive" and transferred to another hospital for additional testing. Evaluators at the medical facility determined that Valerie had been deprived of necessary caloric intake and had been subjected to medical neglect.

During the ensuing Title 9 abuse and neglect action,[2] Max and Peter were placed in one non-relative resource home, while Valerie was placed in a separate home. The parents initially began to make slow progress with services aimed at reunification. However, their progress was delayed by additional allegations of abuse. The Division received a report based upon statements by the

---

[2] See N.J.S.A. 9:6-8.21 to -8.73.

A-4985-15T2

children that alleged Evan watched pornographic movies with the children in the same room and touched his genitals, and that the parents engaged in sexual acts while one of their sons was in the room. One son also alleged that his parents inappropriately touched him. These allegations led to additional evaluations, therapies, and services that the family participated in towards the goal of a family reunification.

While the Title 9 case was pending, Marilyn gave birth to Geoff, who was also placed with a resource family. A year later, the court ordered that Geoff's custody be transferred to Marilyn and that unsupervised weekend visits between Marilyn and the other children take place with the understanding that Evan would not have unsupervised contact with the children.

Following the children's second unsupervised overnight visit, Marilyn fled New Jersey with the children and went to Georgia, where she met Evan, without first obtaining the Division's or the court's consent and without informing either of their location. The Division initiated a search for the parties and their children, which ended when the State of Georgia's child protective service agency informed the Division in July 2015 that the family had been located in that state and that they took the children into custody. Georgia authorities released the children into the Division's custody, and the older children were returned to their previous

resource homes. The court removed Geoff from Marilyn's custody, and he too was returned to his former resource home. The parents were incarcerated in Georgia until they were released to New Jersey authorities, who arrested and incarcerated them.[3]

The Division referred the children for sibling visitation and therapeutic, supervised visits with their parents. However, the court suspended visitation pending psychological evaluations to determine the impact visitation would have on the children. The court also conducted a permanency hearing and found it would not be safe to return custody to the parents. It approved the Division's permanency plan of termination of both parents' parental rights to all of the children and their adoption by their respective resource parents.

On October 6, 2015, the Division filed a complaint for guardianship. The court ordered therapy and supervised visitation, conditioning it upon the older children's desire to see their parents. The Division arranged for individual therapy

---

[3] Evan was sentenced to three years of probation, after pleading guilty to interference with custody, N.J.S.A. 2C:13-4(a)(3). Under the plea agreement, Evan was ordered to follow the recommendations of the Division and have no contact with the children except under Division supervision. Marilyn was released on her own recognizance, with the requirement that she report to criminal case management every Friday or face arrest and that she comply with Division regulations already imposed and have no contact with the children without Division approval.

for the older children and another psychological evaluation. The evaluation consisted of the combined opinion of two psychologists. They opined that contact with the parents might lead to additional trauma and disruption to the children's development and that individual therapy for the children should continue. Subsequent reports from the children's counselors indicated that the children were engaged in treatment and were angry at their parents and excited by the prospect of adoption. Despite the children not wanting to see their parents, and a court order that Evan was not to go near them without Division supervision, Marilyn and Evan attempted to have contact with them, according to reports from Max's resource parent.

The guardianship trial took place over the course of eight days in June 2016 before Judge Lindemann.[4] The Division presented testimony from a Division caseworker, Max's resource parent, and medical and mental health professionals. The doctors who testified discussed the initial harm to Valerie and the trauma suffered by the children as a result of the parents' conduct and their desire to have no contact with their parents. The experts concluded it was not safe for the children to be returned to their parents, as they were incapable of caring for them. One of the psychologists

---

[4] Both parents attended seven days of the trial but then opted not to attend the remainder of the proceedings.

A-4985-15T2

also presented his findings as to a bonding evaluation he conducted with the children, their parents, and their resource parents. The Law Guardian presented additional psychological expert testimony, including the results of another bonding evaluation. Also, Evan called a medical doctor as a witness regarding Valerie's condition, attributing her emaciation to medical issues unrelated to the parents' conduct.

In his comprehensive opinion, Judge Lindemann set forth his consideration of all of the evidence in detail and found that the Division had proven by clear and convincing evidence all four prongs of the best interests test, N.J.S.A. 30:4C-15.1(a), and that termination of defendants' parental rights was in the children's best interests.

Our review of the trial judge's decision is limited. We defer to his expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 412 (1998), and we are bound by his factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). After reviewing the record, we conclude that Judge Lindemann's factual findings are fully supported by the record and, in light of those facts, his legal conclusions are unassailable. We find defendants' arguments to the contrary to

be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION